# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| EMILY SHANK, : | |
| Plaintiff, : | |
| | Case No. 3:14cv00089 |
| vs. : | |
| | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | |
| Security Administration, : | |
| Defendant. : | |

## REPORT AND RECOMMENDATIONS[1]

### I.  Introduction

Plaintiff Emily Shank brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income.  She asserts here, as she did before the administration, that she has been under a benefits-qualifying disability – starting on November 22, 2010 – due to biliary atresia, a liver transplant, depression, and anxiety.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. #6), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II.     Background

### A.     Plaintiff's Testimony

Plaintiff was 29 years old on the alleged disability onset date, which defined her as a "younger individual" for purposes of resolving her DIB and SSI claims.  *See* 20 C.F.R. §§ 404.1563(c); 416.963(c)[2].  Plaintiff has a high school education.  Her past relevant employment includes jobs as a sales clerk, shipping clerk, nurse's aide, and medical assistant.

At her administrative hearing in October 2012, Plaintiff testified she had a liver transplant in 1994. (*PageID#* 81).  She was approximately 14 years old at the time.  She experienced acute liver rejection symptoms immediately following the transplant, which later "went chronic." (*Id.*).  After her rejection became chronic, Plaintiff still tried to work.  With counseling, and trying "different avenues," she was "dealing with it." (*Id.*). She started having panic attacks at work, experiencing tremors, and having memory problems. (*PageID##* 81-82). She began missing work so often that she eventually needed to go on medical leave. (*PageID#* 92).  She stopped working in November 2010. (*PageID#* 82).

Plaintiff felt her biggest problems from her chronic liver dysfunction were fatigue and depression. (*PageID##* 85-86).

Plaintiff testified that the side effects of her anti-rejection medications include

---

[2]The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

2

weight gain, fatigue, tremors, reduced concentration, poor memory, and blurry vision. (*PageID##* 82-83).  She testified that she is limited in the medications she can take to treat her psychiatric problems due to her liver transplant.  (*PageID#* 85).  Every potential medication change needs to be approved by her transplant team, which she finds "a very frustrating process." (*PageID#* 91).  The transplant itself also causes fatigue, as well as pain above the incision line.  (*PageID#* 86).  Plaintiff testified that she has undergone over 20 different surgeries related to the transplant, resulting in a buildup of adhesions and scar tissue in the area.  (*Id.*).  Her pain related to her surgeries is aggravated by simple activites, such as walking or stretching her arms.  (*PageID##* 86-87).  Plaintiff felt that she could not do a sit down job because she has problems with concentration and focus, often forgetting even simple, routine things. (*PageID#* 87).  She also experiences migraine headaches about once every 2 weeks. (*PageID##* 87-88).

     When asked about her anxiety, Plaintiff testified that she is too anxious to drive for longer than very short times.  Even then, she occasionally needs to pull over and calm herself down.  (*PageID##* 88-89)  She experiences anxiety when around strangers and, to a lesser extent, when around her own family.  (*Id.*).  When she tries to go to a restaurant with her family (with their encouragement), she is often too nervous and anxious to actually eat anything.  (*PageID##* 89-90).  Plaintiff has trouble with mood swings all the time, even while at home.  (*PageID#* 90).  She quickly becomes upset and irritated with her family in response to even the smallest issues.  (*Id.*).  She spends 6 to 8 hours each day isolated in her bedroom.  (*PageID#* 91).  When asked if she still struggled with suicidal thoughts,

Plaintiff responded, "at least once a day." (*PageID#* 92).

As to her daily activities, Plaintiff testified that she does "[n]ot really [do] much of anything." (*PageID#* 83). She does not cook on the stove because she cannot keep track of what she is doing. (*Id.*). She sometimes reads or watches television but has difficulty focusing. (*Id.*). At the time of the hearing, she was not sleeping well at night. Plaintiff often gets emotional, angry, or irritated when trying to attend to day-to-day tasks. (*PageID#* 84). She rarely leaves her home, noting that she leaves "maybe three times a week." (*PageID#* 84). She usually just goes to the pharmacy or a local grocery store, and often when she can avoid crowds. She avoids taking even these limited trips out of her house when she is having a bad day, instead asking her parents to pick up her groceries or medications for her. (*PageID##* 91-92). This happens once or twice a month. (*PageID#* 92).

    B.    <u>**Medical Evidence**</u>

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

**III.**    <u>**"Disability" Defined and the ALJ's Decision**</u>

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.³ 42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Christopher L. Dillon applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "liver disease with residuals of a liver transplant; hypertension; asthma; an affective disorder[;] and an anxiety-related disorder . . . ." (*PageID#* 56).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including sections 12.04, 12.06, 3.03, and 5.05. (*PageID#* 58-59).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional

---

³ In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

capacity[4]:

> for work that involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds, pushing or pulling similar amounts; standing, walking, and sitting for six hours each; no climbing of any kind; no more than occasional ability to perform all other postural activity; such as bending, stooping, crouching, crawling, and kneeling; no exposure to environmental extremes, such as dust, gas fumes, heat, cold, humidity; no more than occasional interaction with supervisors, co-workers, but no interaction with the public; no more than simple, repetitive tasks without production quotas.

(*PageID#* 59-64).  The ALJ also concluded at Step 4 that "[i]t is found that the claimant's allegations and subjective complaints lack credibility to the extent that they purport to describe a condition of disability for Social Security purposes."  (*PageID#* 64).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.     Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708,

---

[4] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.     Discussion**

    **A.     Plaintiff's Contentions**

Plaintiff contends the ALJ did not properly weigh the opinions of her treating (acceptable and non-acceptable) medical sources, Anne M. Miller, D.O., Deitrice Chapman, M.D., Kelly Sierra, M.S., P.C.C., and Mary Jo Pollock, PMHCNS-BC.

Plaintiff also argues that the ALJ's findings regarding her daily activities and credibility are not supported by substantial evidence. (Docs. #8 and 11).

### B.     Treating Medical Source Opinions

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson*, 378 at 544. "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 582 F.3d at 406, quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  A treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its

8

finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record. *Wilson*, 378 F.3d at 546.

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### C. <u>Analysis</u>

Plaintiff was initially assessed by psychiatrist Anne Miller, D.O., in August 2009. (*PageID##* 1203-06). Plaintiff reported symptoms of anxiety, and was found to be anxious on mental status examination. Dr. Miller's clinical notes show she diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder. (*PageID##* 1188-1209). Mental status examinations generally indicated a restricted affect, slowed speech, a dysphoric mood, limited judgment, and/or guarded behavior. (*Id.*).

On March 14, 2011, Dr. Miller reported that Plaintiff's mental status examinations revealed she was oriented x3, has a blunted affect and anxious mood, but her thoughts were goal oriented. Dr. Miller also reported that Plaintiff suffered from low frustration tolerance and confusability, but her memory is fair. Plaintiff was diagnosed with

generalized anxiety disorder and recurrent major depression. (*Id.*). Dr. Miller opined that Plaintiff is limited in her ability to engage in social interactions and has a "very poor" ability to tolerate routine daily stressors. (*PageID#* 537-39). Dr. Miller also completed an FMLA certification on Plaintiff's behalf in which she essentially opined that Plaintiff was unable to work in her current condition, which started in December 2010. (*PageID##* 540-43).

The ALJ assigned "little weight" to Dr. Miller's opinions, finding she "provided no treatment records or clinical findings that would support her opinion that claimant would be able to work from a mental standpoint." (*PageID#* 60). The ALJ recognized Dr. Miller as a treating psychiatrist, however, his reason for not giving her opinion controlling weight is unsupported by substantial evidence in the record, as required under 20 C.F.R. § 404.1527(c)(2). Although the ALJ discussed other medical records concerning Plaintiff's mental health treatment, he did not state whether or how any of the evidence was inconsistent with Dr. Miller's assessment of Plaintiff's mental capacities. The cursory statements of the ALJ are therefore insufficient to permit a meaningful review of whether the ALJ properly applied the controlling weight test.

Having obviously concluded that Dr. Miller's opinion was not entitled to controlling weight, the ALJ also did not apply the factors in §404.1527(c) in determining what other weight to give her opinion. Although a formulaic recitation of the factors listed in 20 C.F.R.§ 404.1527(c)(2)-(6) is not required, *see Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010), any "good reasons" for discounting the weight given to a

treating-source opinion must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242; *see also Gayheart*, 710 F.3d at 377 ("The failure to provide 'good reasons' for not giving [the treating psychiatrist's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation.")(citing *Wilson*, 378 F.3d at 544). The ALJ's discussion of Plaintiff's treatment relationship with Dr. Miller was cursory at best. The ALJ's primary reason for disregarding Dr. Miller's opinion is "she provided no objective support for [her] opinion," *PageID#* 60, however, the record contains Dr. Miller's mental health treatment notes from August 2009 through March 2001. (*PageID##* 1188-1209). These notes generally indicate that Plaintiff exhibited a restricted affect, slowed speech, a dysphoric mood, limited judgment, and/or guarded behavior. (*See id.*). When mental work abilities are at issue, such symptoms constitute supporting medical or objective evidence. As the United States Court of Appeals for the Sixth Circuit has explained:

> In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices . . . in order to obtain objective clinical manifestations of mental illness . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817

11

F.2d 865, 873-74, 260 U.S. App. D.C. 142 (D.C. Cir. 1987)(other citation omitted).

In addition, the ALJ's finding that Plaintiff received no mental health treatment until after her alleged onset date of disability is also not supported by substantial evidence. The record indicates Plaintiff sought treatment from a mental health care provider, Kelly Sierra, M.S., P.C.C., as early as April 2009 (*PageID##* 544, 547). Ms. Sierra initially diagnosed Plaintiff with a panic disorder and assigned her a Global Assessment of Functioning[5] (GAF) score of 63. (*PageID##* 547-48). Ms. Sierra's clinical record shows Plaintiff's counseling focused on her struggles with anxiety. Ms. Sierra's notes from March 2011 indicated, among many other findings, that Plaintiff has been slowly decompensating since 2009. Ms. Sierra listed Plaintiff's diagnoses as generalized anxiety disorder; major depressive disorder, recurrent and severe; and panic disorder in partial remission with the aid of medication. (*PageID##* 544-46). Likewise, Plaintiff's primary care physician, Dr. Deitrice Chapman, M.D., began prescribing her psychotropic medication to treat her depression as early as January 2008, years before she applied for benefits and her alleged onset date of disability. (*PageID#* 491-94).

By discounting Dr. Miller's opinions, in part, due to incorrectly addressing the length, nature and extent of her treatment relationship with Plaintiff, *see Blakley*, 581 F.3d

---

[5]Global Assessment of Functioning ("GAF") is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32- 34. A GAF score of 61-70 indicates that a person has only mild symptoms or some difficulty with social, occupational or school functioning, but such a person can generally function pretty well and have some meaningful interpersonal relationships. *Id.*

at 406 (citing *Wilson*, 378 F.3d at 544), the ALJ did not properly consider all factors that must be taken into account in determining the weight given to the opinion of a treating physician.  Specifically, the Regulations instruct as follows:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. . .  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p (emphasis added).  Because the ALJ did not follow these requirements, and did not apply the correct legal criteria to Dr. Miller's opinions, his evaluation of those opinions constitutes an error of law.  *See Bowen*, 478 F.3d at 746.  Accordingly, the ALJ's decision to give "little weight" to Dr. Miller's opinions is unreasonable and unsupported by the evidence.

Even if the ALJ somehow properly rejected the opinion of Dr. Miller, he nonetheless also erred by rejecting the opinions of Plaintiff's primary care physician, Dr. Chapman, based on the fact her 2011 opinions were prepared as part of an application to determine Plaintiff's eligibilty for state Medicaid benefits.  The ALJ declined to provide Dr. Chapman's opinion with significant or controlling weight, relying, in part, on the basis that Basic Medical forms (ODHS 7302) "were not designed, nor were they ever intended to be used, to determine eligibility for disability benefits under the Social Security Act." (*PageID#* 61).  As this Court previously held, however, "[t]o reject such forms because

13

they were prepared as part of Plaintiff's application for Medicaid benefits unduly prejudices impoverished claimants whose physicians may be unwilling to complete multiple redundant opinion forms for different government agencies." *Clemmer v. Comm'r of Soc. Sec.*, 3:13cv40, 2013 U.S. Dist. LEXIS 167247, *32-33 (S.D. Ohio Novemeber 25, 2013)(Black, D.J.). Accordingly, it was improper for the ALJ to rely on such a fact when determining the amount of weight to provide Dr. Chapman's opinions. *Id.* at *28 ("[T]he fact that [the treating physician's] opinion was prepared as part of an application for county welfare benefits cannot stand as a reason to discredit the opinion.").

For these reasons, Plaintiff's Statement of Errors is well taken.[6]

## VI.     **Remand is Warranted**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand warranted by an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the

---

[6] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions, including other arguments as to the ALJ's weighing of treating medical source opinions, is presently unwarranted. Nonetheless, the Commissioner is encouraged to revisit these issues on remand.

plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB and SSI during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for

further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Emily Shank was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

May 1, 2015

                                              s/Sharon L. Ovington
                                               Sharon L. Ovington
                                    Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).